THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAMES PRESHA, Respondent. — Order, Supreme Court, Bronx County (Lawrence H. Bernstein, J.), entered May 17, 1983, which granted defendant's motion to suppress physical evidence (a gun, ammunition and a transit pass), reversed, on the law, the motion to suppress is denied, and the matter is remanded for further proceedings.

On October 22, 1982, at about 5:20 P.M., three transit police officers (Officers Stephens, Barreto and Horowitz) were on routine patrol inside the IND subway station at Kingsbridge Avenue and Grand Concourse, when Officer Stephens observed two male youths "Loitering in the vicinity of the booth area." He defined loitering as "hanging around", which they did for some 15 minutes. He observed them enter the exit gate to the subway platform, flashing their wallets in the direction of the token booth clerk as though they had passes. The two youths separated after they entered onto the platform, walking in different directions.

Officers Stephens and Barreto approached one of the youths, the defendant, and Officer Horowitz approached his companion. Identifying himself, Stephens asked to look at his pass. The defendant presented a Rapid Transit Lines pass which exhibited indicia of invalidity, including an apparent erasure, the absence of any indication of a home or school station and, most particularly, indicated a school inappropriate to the use of the pass at the particular subway station.

When Stephens started to question defendant as to his use of the wrong station and the omissions in the pass, Officer Horowitz shouted, "he has a gun." The defendant took several steps backward and was turning around when Stephens seized him and placed him under arrest. Eventually a gun was removed from defendant's waistband.

In granting defendant's motion to suppress the seized evidence, the trial court concluded that the action of the officers was appropriate from the moment the misuse of the pass was ascertained, but that the officers had no basis for approaching the defendant, citing in this connection *People v De Bour* (40 NY2d 210). We disagree with this latter conclusion and accordingly reverse and deny the motion to suppress.

Preliminarily, we agree with the trial court that Officer Stephens was authorized to arrest the defendant once he had found evidence that the pass was being improperly used. It is a class A misdemeanor for someone, with intent to obtain subway or other public transportation service, to avoid or attempt to avoid "payment therefor by force, intimidation, stealth, deception * * * or by unjustifiable failure or refusal to pay" (Penal Law, § 165.15, subd 3). Whether or not the officer would have arrested defendant upon finding evidence that the pass was being misused in the absence of the shouted warning by his brother officer and the defendant's response to that warning is not legally significant.

As to the trial court's conclusion that the officers had no right under the circumstances to approach defendant and his companion, we believe this aspect of his determination involved the application of an erroneous standard. Implicit in the issuance of a transit pass is the right of authorized personnel of the subway system to make appropriately limited inquiries with regard to persons entering onto the subway platform without payment under the supposed authority of a pass. It could hardly be questioned that the token booth clerk would have had a right to examine closely the passes flashed in his direction if he had any doubt of their validity. We perceive no reason why the transit officers were not equally authorized to undertake such an examination. (Cf. *People v Smith,* 59 NY2d 454.) It is accordingly unnecessary to determine whether or not the totality of the circumstances described by the officers would have independently entitled them to approach the defendant and his companion under the standards set forth in *People v DeBour (supra).* Concur — Sandler, J. P., Sullivan, Carro and Milonas, JJ.