OPINION OF THE COURT
Dominic R. Massaro, J.
Now comes Raymond Figueroa, pro se, moving pursuant to CPL 440.10 to set aside his conviction. The procedural bar to his motion notwithstanding, review of the substantive rights claimed under our State Constitution does not mandate the requested relief.
Case History
On November 23, 1994, a judgment was rendered herein (Bamberger, J.) convicting defendant, following a jury trial, of burglary in the second degree (Penal Law § 140.25 [2]), and sentencing him to an indeterminate term of imprisonment from 6 to 12 years. On November 1, 1995, defendant filed a motion to vacate judgment pursuant to CPL 440.10 (1) (g) and (h), claiming that the People’s evidence in his CPL 30.30 speedy trial hearing was insufficient, and that he had discovered new evidence which proved he was not avoiding apprehension. On June 26, 1996, defendant’s motion was denied (Bamberger, J.) in that any issue raised at defendant’s CPL 30.30 hearing could be taken up on appeal, and that defendant’s “new” evidence did not meet the standard for newly discovered evidence pursuant to CPL 440.10 (1) (g). On August 28, 1996, defendant was granted leave to appeal the denial of his CPL 440.10 motion.
Initially, on direct appeal to the Appellate Division, First Department, defendant claimed that he was deprived of his right to a speedy trial, pursuant to CPL 30.30; however, Mr. Figueroa withdrew this motion and filed a new motion, on August 4, 1997, raising two alternative issues: (a) that his conviction was against the weight of the evidence, and (b) that he received ineffective assistance of trial counsel because counsel failed to argue the purported application of People v Gokey (60 NY2d 309 [1983]) during a pretrial suppression hear *541 ing. On October 29, 1998, the conviction was affirmed and the motion to vacate judgment denied. The appellate court noted that defendant’s ineffective assistance claim was unreviewable because “it is based on facts dehors the record and trial counsel has had no opportunity to explain her trial tactics” (People v Figueroa, 254 AD2d 226 [1st Dept 1998], lv denied 92 NY2d 1049 [1999]). The Court also held that “[t]o the extent that the existing record permits review, we find that defendant received meaningful representation” (at 226).
On March 10, 1999, defendant filed a petition for a writ of habeas corpus in the United States District Court, Southern District of New York, again claiming that he was denied effective assistance of counsel because of counsel’s failure to argue People v Gokey (supra) at the suppression hearing. Mr. Figueroa later withdrew this petition.
Now, in motion papers dated August 9, 2000, defendant once again moves to set aside his conviction pursuant to CPL 440.10 (1) (h), on the ground that his constitutional right to a fair trial was violated. Defendant similarly claims that because trial counsel did not argue the purported application of People v Gokey (supra) at the suppression hearing, the judgment of conviction should be vacated, or a hearing should be held to determine if vacatur is appropriate.
The Procedural Bar
In moving the court to vacate his 1994 conviction on the ground that his right to a fair trial was violated, defendant specifically claims that he received ineffective assistance of trial counsel, because counsel did not cite People v Gokey (supra) during the pretrial suppression hearing. Gokey stands for the proposition that “a warrantless search incident to arrest be deemed unreasonable unless justified by the presence of exigent circumstances.” (Supra, at 312.) Exigent circumstances are defined as encompassing “the safety of the * * * arresting officer; and the protection of evidence from destruction” (People v Gokey, supra, at 312).
This claim, as a threshold issue, is barred on any number of procedural grounds. Foremost, it has already been reviewed and rejected on appeal. This occurred in 1997 on direct appeal to the Appellate Division, First Department, wherein the same claim was interposed. The Appellate Division, in rendering a decision on defendant’s appeal, stated that “[t]o the extent that the existing record permits review * * * defendant received meaningful representation” (People v Figueroa, 254 AD2d 226 *542 [1st Dept 1998], supra). Leave to appeal was denied (see People v Figueroa, 92 NY2d 1049 [1999], supra). Consequently, as defendant’s current claim “was previously determined on the merits upon an appeal from the judgment,” his present motion must be denied (GPL 440.10 [2] [a]).
Moreover, defendant’s claim is summarily rejected as his moving papers “do not contain [the] sworn allegations [necessary to] substantiate [ ] or tending to substantiate all the essential facts” and is otherwise “unsupported by any other affidavit of evidence” (GPL 440.30 [4] [b], [d] [i]). A judgment of conviction is presumed valid, and a defendant moving to vacate a judgment of conviction has the burden “of coming forward with allegations which create an issue of fact” (People v Braun, 167 AD2d 164, 165 [1st Dept 1990], citing People v Session, 34 NY2d 254, 255 [1974]).
Mr. Figueroa’s mere reiteration of the same argument he asserted on direct appeal, that is, because counsel failed to argue Gokey (supra) he is entitled to a vacatur of judgment, without the benefit of presenting further evidence to support this contention, does not overly impress. Nor does defendant allege that the arguments made by his attorney were, in fact, merit-less. Moreover, defendant has failed to meet his burden of submitting an affirmation from his former attorney tending to substantiate his claims, and has offered absolutely no explanation for his failure to do so (see, e.g., People v Morales, 58 NY2d 1008 [1983]; People v Taylor, 211 AD2d 603 [1st Dept 1995]). Defendant’s allegations, then, are insufficient to substantiate his claims concerning his attorney’s conduct (see GPL 440.30 [4] [b], [d]). Further, the fact that Mr. Figueroa repeatedly quotes from the record makes it clear that this is a record-based claim which has already been resolved on appeal (see GPL 440.10 [2] [c]). And the Appellate Division determined that defendant received effective assistance based upon the record (see People v Figueroa, 254 AD2d 226 [1st Dept 1998], lv denied 92 NY2d 1049 [1999], supra; GPL 440.10 [2] [a]).
Defendant’s previous opportunity to raise his ineffective assistance claim in his 1995 GPL 440.10 motion was squandered. He “did not do so” (GPL 440.10 [3] [c]). Nor has Mr. Figueroa offered any justification for an exercise of discretion where such failure is extant. Consequently, this GPL provision being consistent with others aimed at discouraging proliferation (see GPL 210.20 [3]; 255.20 [2]), he is estopped from raising the claim in the instant motion.
Despite the fact that facts in support of this issue could “with due diligence by the defendant have readily been made to ap *543 pear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment,” Mr. Figueroa “unjustifiably failed to adduce such matter prior to sentence” (CPL 440.10 [3] [a]). Here, again, defendant offers no explanation for the court to consider excusing his laxity.
New York Rule Considered
An indelible right to counsel is guaranteed by both the Federal and State Constitutions (see US Const 6th Amend; NY Const, art I, § 6). The proposition that this right can exist separate and apart from the right to effective assistance of counsel is inconsistent. In this respect, the safeguards guaranteed by New York’s Right to Counsel Clause are unique (see NY Const, art I, § 6). By constitutional and statutory interpretation, a protective body of law in this area resting on concerns, inter alia, of due process has been established; and the right to counsel provision of the State Constitution is substantially greater than that recognized by other State jurisdictions and “far more expansive than the Federal counterpart” (People v Bing, 76 NY2d 331, 339 [1990]; see People v Davis, 75 NY2d 517 [1990]; People v Hobson, 39 NY2d 479 [1976]; see also, 2 LaFave and Israel, Criminal Procedure § 6.4, at 488-489 [1999 2d ed]; and generally, Galie, The Other Supreme Courts: Judicial Activism Among State Supreme Courts, 33 Syracuse L Rev 731 [1982]). By contrast, the New York rule has been described as a “cherished principle,” rooted in this State’s prerevolutionary constitutional law, “[s]o valued * * * [that] it has developed independent of its Federal counterpart” (People v Settles, 46 NY2d 154, 160-161 [1978]). The “highest degree of [judicial] vigilance” is required to “safeguard” it (People v Cunningham, 49 NY2d 203, 207 [1980]). Manifestly, protection of the right to effective assistance of counsel is a matter of singular concern under New York jurisprudence; it is appropriate that claimed substantive violations of it necessarily be considered, even where procedural bars would otherwise not afford such consideration. This not only to insure the rights of the defendant in question, but for the protection and well-being of the commonweal.
The requirement of “exigent circumstances” to justify a search incident to arrest distinguishes New York law from Federal law. Under Federal law, the United States Supreme Court has upheld the search of a “closed container” as a lawful search incident to arrest (New York v Belton, 453 US 454 *544 [1981], revg 50 NY2d 447 [1980]). The Court reasoned that an arrest based on probable cause is a reasonable intrusion and therefore will always provide sufficient justification for a police search of any container within the “immediate control” of the arrestee. Such searches would be valid even if the containers searched “could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested” (New York v Belton, supra, at 461).
However, when Belton (supra) was reargued on remand, our Court of Appeals refused to adopt the broader view of a search incident to arrest. In its stead, the Court, rejecting a per se rule, fashioned the far more restrictive New York policy of independent rationale. Indeed, even where the language of section 12 of article I of our State Constitution conforms precisely with the language of the Fourth Amendment to the United States Constitution regarding the proscription against unreasonable searches and seizures, “ ‘a State is free as a matter of its own law to impose greater restrictions on police activity5 ” (People v Belton, 55 NY2d 49, 58 [1982] [Fuchsberg, J., dissenting], quoting Oregon v Hass, 420 US 714, 719 [1975]; cf. People v Smith, 59 NY2d 454 [1983]).
People v Gokey followed and the Court held (supra, at 311) that
“[a] duffel bag that is within the immediate control or ‘grabbable area’ of a suspect at the time of his arrest may not be subjected to a warrantless search incident to the arrest, unless the circumstances leading to the arrest support a reasonable belief that the suspect may gain possession of a weapon or be able to destroy evidence located in the bag.”
This decision clearly reinforces the New York rule that a search incident to arrest will be considered reasonable only if exigent circumstances are extant.
Ineffective Assistance of Counsel
It is well settled that in reviewing ineffective assistance of counsel claims, care must be taken to “avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis” (People v Baldi, 54 NY2d 137, 146 [1981]). Consideration of the totality of a case — the evidence presented, the law governing, the context of the extant circumstances — is what reveals if meaningful representation was provided. Viewed objectively and together a defendant’s constitutional right to such assistance may well *545 have been satisfied (see People v Satterfield, 66 NY2d 796 [1985]).
Here, the burden falls to defendant to establish that he was denied meaningful representation and to overcome the strong presumption that he was represented competently. He must show that, but for counsel’s allegedly deficient performance, the outcome would have been different (see People v Divine, 193 AD2d 562 [1st Dept 1993]; People v Diaz, 157 AD2d 569 [1st Dept 1990]). As our Court of Appeals has instructed:
“trial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness. So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met” (People v Baldi, supra, at 146-147).
Through the efforts of trial counsel, defendant was in the first instance granted a suppression hearing. Mr. Figueroa would be hardpressed to claim that counsel was ineffective merely because the hearing court did not rule in his favor (see Baldi, supra). Accordingly, since defendant has failed to produce any evidence to support the facts upon which his claim is based, or to demonstrate how the alleged conduct by his attorney was prejudicial or required reversal of the judgment against him, he has failed to meet the high burden of establishing that he was deprived of fairness by less than meaningful representation (see People v Flores, 84 NY2d 184 [1994]; People v Benn, 68 NY2d 941 [1986]).
The fact that trial counsel in the instant matter did not argue the application of one case at suppression does not automatically render her assistance ineffective (see, e.g., People v Hobot, 84 NY2d 1021, 1022 [1995] [defendant did not receive ineffective assistance where, although trial counsel “erred in failing to familiarize himself’ with a potentially exculpatory document, the document would not have conclusively refuted the People’s case, and where counsel properly defended defendant in all other respects]; People v Rivera, 71 NY2d 705, 709 [1988] [a showing that counsel “failed to make a particular pretrial motion” generally does not, by itself, establish ineffective assistance of counsel], citing People v De Mauro, 48 NY2d 892 [1979]; People v Morris, 64 NY2d 803, 804 [1985] [failure to request a Wade hearing did not deprive defendant of effective representation]). Here, defense counsel’s representation was *546 meaningful in all other aspects of the case at bar. Sufficient facts do appear on the record for this court to make such an informed determination, as well as to ascertain whether defendant received effective assistance.
Counsel’s satisfactory performance is amply evident from a review of both the hearing and trial transcript(s), the record of which defendant cites profusely in the instant motion. Preparation was obvious at each stage of the proceedings, and counsel vigorously contested all of the People’s proffers with appropriate objection and/or intelligent cross-examination. A valiant effort to establish her client’s lack of criminal involvement and/or responsibility was pressed at every opportunity. Mr. Figueroa himself was well prepared, skillfully questioned and offered strong and contrasting direct testimony at trial. Counsel innovated in argument before the bench and before the jury alike that the specific premises involved was not “a dwelling” — an element essential to sustaining the crime charged. She requested special charges for the jury’s consideration. She explored and exploited every inconsistency during her summation at the close of trial.
Moreover, it is not at all surprising that defense counsel failed to offer Gokey (supra) as legal support for the suppression motion as she was likely aware that “such a motion would, in all probability, [be] summarily denied” (see People v Ferreiras, 222 AD2d 202, 203 [1st Dept 1995] [counsel not ineffective where “(a)lthough counsel did not move to suppress identification testimony in timely fashion,” such an application was not likely to be successful]). In light of these factors, it is presumed that counsel acted in a competent manner and exercised professional judgment. Nor is it for a court to second-guess whether a course chosen by defense counsel was the best trial strategy, or even a good one, so long as the defendant was afforded meaningful representation, as was the herein defendant.
The Gokey Argument
As the People have correctly noted in their response, Mr. Figueroa’s assertion that People v Gokey (supra) is directly applicable to his case is misplaced. A bag within a suspect’s “grabbable area” may be subjected to a warrantless search where “the circumstances leading to the arrest support a reasonable belief that the suspect may gain possession of a weapon or be able to destroy evidence located in the bag” (Gokey, supra, at 311). Surely this reading does not abandon the well-established position that
*547 “[a] container capable of concealing a weapon and the contents of which are readily accessible, taken from a person arrested or from the area readily accessible to him, may be searched without a warrant when the search is close in time to the arrest and there is reason to suspect that the arrested person may be armed” (People v Smith, supra, at 455-456).
The facts of the instant case are uncomplicated and undisputed. After being informed by an onlooker that a man “just [broke] the window and [climbed] into the doctor’s office,” the police immediately arrived and, peering through a broken window and dismantled shade with the aid of a flashlight, observed defendant standing in a dark room with a pink laundry bag. This at 1 o’clock in the morning. The police directed defendant to “drop the bag” and come out of the window, which he did. An inculpatory statement was uttered. Thereupon Mr. Figueroa was placed under arrest and handcuffed. An officer then reached into the office to remove and subsequently open the bag. A telephone and an answering machine were recovered inside.
The police here did not at first know what was contained in defendant’s laundry bag: under the circumstances, defendant may very well have been armed, in order to carry out his act of burglary. That defendant was first ordered to drop the bag demonstrates that the police were under a valid suspicion that their safety was jeopardized by its contents, that is, “that the arrested person may be armed” (id., at 456). Consequently, since the contents of defendant’s laundry bag could reasonably have posed a threat to the officers’ safety, the bag was properly searched in accordance with applicable “exigency” law (see Gokey, supra; Smith, supra).
Notably, the facts in Gokey were markedly different from the present case. There, after the police were informed that the der fendant was in possession of marihuana, they stopped him and searched his bag. Clearly, the Court recognized that the police in that case were presented with no exigent circumstances to justify a search of the defendant’s bag, since they were operating under the belief that the defendant’s bag contained marihuana, but nothing that would jeopardize their safety (see Gokey, supra). Therefore, Gokey is inapplicable here.
That Mr. Figueroa places great store in the fact that he was handcuffed when the police searched his bag does not, in and of itself, decrease the exigency of the officers’ concern. The search was virtually contemporaneous with Mr. Figueroa’s ar *548 rest and handcuffing (see Smith, supra [the fact that a defendant was moved from a subway platform into a room less than 10 feet away did not decrease a reasonable concern for police safety in searching his briefcase]). The search of the within laundry bag can be analogized and so justified by the circumstances presented. (Contrast, e.g., People v Montgomery, 128 Misc 2d 463 [1985] [defendant permitted to retain physical possession of his knapsack until removal to a department store security office several floors below belied exigency].) “Whether in fact defendant could have had access to the briefcase at the moment it was being searched is irrelevant. He clearly could have had when arrested” (Smith, supra, at 459). Handcuffing does not necessarily dissipate the reasonableness of conducting a warrantless search incident to a lawful arrest.
“For compelling reasons * * * a search ‘not significantly divorced in time or place from the arrest’ may be conducted even though the arrested person has been subdued and his closed container is within the exclusive control of the police” (People v Smith, supra, at 458, quoting People v De Santis, 46 NY2d 82, 88 [1978]).
It should be noted that defendant’s laundry bag would have been discoverable pursuant to the inventory exception to the search warrant requirement. It is not unreasonable for police, as part of routine procedure incident to incarcerating an arrestee, to search any article or container in his possession in accordance with established inventory procedure.
Furthermore, the People could yet have proven defendant’s guilt of burglary in the second degree without admission of the bag into evidence. Its absence would not have conclusively refuted the People’s case. For a defendant to be convicted of second degree burglary, the People must prove only that an accused knowingly entered or unlawfully remained inside a dwelling with the intent to commit a crime therein (see Penal Law § 140.25 [2]). Here, the hearing court credited the police with probable cause to arrest and found no impropriety in police conduct. Defendant stated to the police that he was present in the office “to see what [he] could get.” Standing alone, such evidence is sufficient, if believed, for a trier of fact to determine a defendant’s guilt of second degree burglary.
Conclusion
In sum, defendant’s motion merely serves to repeat the allegations which have already been reviewed and rejected on *549 appeal. Mr. Figueroa otherwise fails to sustain any non-record-based evidence in support of his claim. Accordingly, the prayed-for relief is procedurally barred under any of the circumstances specified in CPL 440.10 (2) (a) or (c); 440.10 (3) (a) or (c); or 440.30 (4) (b) or (d).
That having been said, turning to our State Constitution, consideration of the evidence, the law and the totality of the circumstances of the underlying case, taken together, suggests that defendant was well and meaningfully represented, and that the protection invoked by Mr. Figueroa under New York’s more expansive safeguards otherwise does not, on this record, resonate with merit. Consequently, his prayer is in all respects denied.